# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Action No. 7:05-cr-10 (HL) |
| | : | |
| ANTHONY CANTANZARITI, | : | |
| DONALD J. OTTMAN, JR., | : | |
| DONALD J. OTTMAN, III, and | : | |
| MICHAEL RINI, | : | |
| | : | |
| Defendants. | : | |

_____

## ORDER

Before the Court is the question of what amount of mandatory restitution each Defendant owes. For the reasons set forth below, the Court finds Anthony Cantanzariti ("Cantanzariti"), Donald J. Ottman, Jr. ("Ottman, Jr."), Donald J. Ottman, III ("Ottman, III") and Michael Rini ("Rini") are jointly and severally responsible for $250,950.98.

## I.    PROCEDURAL BACKGROUND

The present case arose from an investigation by agents of the United States Postal Inspection Service, who determined that over the course of six months in 2000, more than 1000 people were fraudulently told that they had been approved for loans by the companies the Defendants worked for and owned. Investigators further determined that $322,643.93 was obtained from at least 1255 individuals, but that loans were never given to these victims. It was

1

on the basis of this overall scheme that the four Defendants,[1] Cantanzariti, Ottman, Jr., Ottman, III, and Rini, were charged with Count One of the Indictment—Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 371, i/c/w § 1341.  The remaining ten counts of the Indictment charged Defendants with Mail Fraud, in violation of 18 U.S.C. § 1341, as it pertained to specific victims of the conspiracy.

On October 14, 2005, Cantanzariti pled guilty to one count of Conspiracy to Commit Mail Fraud.  Approximately one month later, on November 18, 2005, a jury found Ottman, Jr., Ottman, III and Rini guilty on various counts.  Ottman, Jr. was convicted of one count of Conspiracy to Commit Mail Fraud and four counts of Mail Fraud.  Ottman, III was convicted of one count of Conspiracy to Commit Mail Fraud and eight counts of Mail Fraud.  Rini was convicted of one count of Conspiracy to Commit Mail Fraud and three counts of Mail Fraud.

After Defendants' guilty plea and convictions, and in anticipation of their sentencings, the United States Probation Office ("Probation") prepared Presentence Reports ("PSR") for each Defendant that included an accounting of their victims' losses.  These PSRs identified 1057 victims, and estimated the amount subject to restitution totaled approximately $242,469.  Ottman, Jr., Ottman, III, and Rini filed objections to the sections in their PSRs that indicated they should be required to pay mandatory restitution in the amount of $242,469.  The three Defendants argued they should not be held liable for restitution in the amount the entire conspiracy allegedly recovered, and counsel for each man requested an evidentiary hearing so

---

[1] A fifth Defendant, Rachel Cantanzariti, was indicted but later dismissed from the case.

2

that a "more appropriate" restitution amount could be determined.

On March 7, 2006, Probation subsequently submitted a Memorandum, pursuant to 18 U.S.C. § 3664(d)(5), notifying the Court ten days prior to sentencing that the victims' losses were not yet ascertainable, and detailing the difficulty the Government had encountered in attempting to locate all of the victims. Accordingly, the Court scheduled an evidentiary hearing for May 30, 2006, to determine the proper restitution amount for each Defendant. At that May 30, 2006 hearing, Probation provided the Court with an updated Memorandum regarding restitution.[2] Having evaluated all of the relevant evidence in this case, the purpose of the present Order is to set forth the amount of mandatory restitution owed by each Defendant, as well as an appropriate repayment schedule.[3]

## III.    ANALYSIS

### A.    Standard

Under the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. §§ 3613A,

---

[2] Cantanzariti did not file written objections to paying the approximately $293,000 restitution amount charged in the Indictment, which he had agreed to repay in his plea agreement. However, when the Government indicated at the May 30, 2005 evidentiary hearing that it had only been able to identify $250,950.98 in losses, Cantanzariti's counsel petitioned the Court that the restitution amount he owed be reduced to that number. The Government orally indicated at the May 30, 2006 hearing that it did not object to this reduction.

[3] Per 18 U.S.C. § 3664(d)(5), the Court must make a final determination of the victims' losses in a case no later than 90 days after the defendants' sentencing hearing is held. If this 90 day window is exceeded, any restitution order by the Court is invalid. See, e.g., United States v. Maung, 267 F. 3d 1113, 1120-21 (11th Cir. 2001) ("If the court believes more time is required to ascertain the amount of victim losses, it can postpone sentencing and thereby put off the start of the 90-day period. What a court generally may not do, however, is impose a sentence and then delay determination of the amount of losses more than 90 days from sentencing."). Defendants were sentenced on March 15, 2006, therefore this Order is timely filed within 90 days of that date.

3663A, a district court is required to order that a defendant convicted of an offense against property under Title 18 make restitution to the victim of the offense. 18 U.S.C. § 3663A(a)(1), (c)).  As the United States Court of Appeals for the Eleventh Circuit has explained, "[t]he calculation of restitution is a matter over which district courts possess limited discretion. . . . [Under the MVRA], the district court must order restitution to each victim in the full amount of each victim's losses for, *inter alia,* crimes against property." Cani v. United States, 331 F.3d 1210, 1215 (11th Cir. 2003) (quotations and citations omitted).  Furthermore, "[u]nder the MVRA, the district court must order the payment of restitution in the full amount of the victim's loss without considering the defendant's ability to pay." United States v. Siegel, 153 F.3d 1256, 1258 (11th Cir. 1998) (explaining that under the pre-MVRA system, by contrast, a district court was required to consider a defendant's ability to pay when calculating a restitution order).

B.      **Procedure**

i.      **Preponderance Burden: Losses to Each Victim**

The procedure for the calculation and issuing of restitution orders is set forth in § 3664.  Initially, a sentencing court shall direct a probation officer to prepare a report providing "to the extent practicable, a complete accounting of the losses to each victim."  18 U.S.C. § 3664(a).  The government bears the burden of demonstrating the amount of each victim's loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).  The United States Court of Appeals for the Eleventh Circuit has held that "the preponderance standard must be applied in a practical, common-sense way.  So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering

4

restitution." <u>United States v. Futrell</u>, 209 F.3d 1286, 1292 (11th Cir. 2000).

Furthermore, § 3663(c)(1)(B) makes it clear that mandatory restitution can only be imposed to the extent that the victims of a crime are "identifiable." <u>See, e.g.</u>, <u>United States v. Zakhary</u>, 357 F.3d 186, 189-90 (2d Cir. 2004) (finding a lump sum restitution order entered without any identification of victims and their actual losses is impermissible). Similarly, the MVRA provides two circumstances under which victims are not entitled to mandatory restitution: when (1) "the number of identifiable victims is so large as to make restitution impracticable," or when (2) "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3). However, the Court has been unable to find a case in the Eleventh Circuit wherein either exemption was invoked.

### ii.    Defendant's Ability to Pay and District Court's Schedule Setting

Once the amount of the victim's losses has been determined, the court must craft a schedule for payment considering (1) the financial resources and other assets of the defendant, (2) the projected earnings and other income of the defendant, and (3) any financial obligations of the defendant, including obligations to dependents. 18 U.S.C. § 3664(f)(2)(A)-(C). To this end, § 3664(a) further provides that the probation officer's report shall provide "information relating to the economic circumstances of each defendant." 18 U.S.C. § 3664(a). Nevertheless, "[t]he burden of demonstrating the financial resources of the defendant and the financial needs

of the defendant's dependents, shall be on the defendant." 18 U.S.C. § 3664(e). Therefore, while it is clear a district court may not consider the financial limitations of a defendant when ordering restitution to each victim in the full amount of each victim's losses, "the district court enjoys more flexibility and can consider the defendant's financial circumstances in setting a schedule for the payment of restitution." Cani, 331 F.3d at 1214.

In crafting a restitution schedule, "[a] court may order a single lump-sum payment, periodic payments, or a combination thereof. 18 U.S.C. § 3664(f)(3)(A). If payment is not required immediately, the court must specify the length of time over which the payments are to be made, and it cannot delegate this duty. 18 U.S.C. § 3572(d)(2)." United States v. Martinez, 320 F.3d 1285, 1288-89 (11th Cir. 2003) (citation omitted). Section 3664(f)(3)(B) also provides that the court may direct "nominal periodic payments." Thus, if faced with a mandatory restitution finding combined with an indigent defendant, "a sentencing court could elect to impose nominal payments during the period of incarceration and thereafter until such time as the court is notified by the victim or the United States that there has been a material change in the defendant's ability to pay." United States v. Prouty, 303 F.3d 1249, 1256 (11th Cir. 2002) (combining 18 U.S.C. § 3664(f)(3)(B) with 18 U.S.C. § 3664(k), discussed *infra*).

### iii.    Reconsideration

A defendant, whether he chooses to challenge the district court's initial calculation of restitution or not, may subsequently notify the district court and Attorney General "of any material change in [his] economic circumstances that might affect [his] ability to pay

restitution." 18 U.S.C. § 3664(k). "In this vein, the MVRA enables the district court to modify a restitution order to reflect subsequent losses discovered by the victim . . . or a *bona fide* change in the defendant's financial condition, either positive or negative." <u>Cani</u>, 331 F.3d at 1215 (citations omitted).

### iv.    Joint and Several Liability

Whether to apportion restitution among defendants is a discretionary decision of the district court. <u>See</u> 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."); <u>see also</u> <u>United States v. Beverly</u>, No. 05-14067, 2006 WL 615938, at *2 (11th Cir. March 13, 2006) ("[T]he district court ha[s] the discretion to apportion liability among codefendants, and did so [here] by holding [Defendant One] jointly and severally liable for $18,000 while holding [Defendant Two] jointly and severally liable for the total $30,000 of loss. . . .").

### v.    Liability for Loss Caused During Scheme-Based Crimes

The United States Court of Appeals for the Eleventh Circuit, examining to what degree a defendant could be held liable for restitution when he was involved in scheme or conspiracy, has reached a number of relevant holdings. First, the Eleventh Circuit has indicated that restitution for mail or wire fraud is not limited to the specific act of fraud underlying the mailing or use of the wires for which the defendant is convicted, but for the entire scheme or

artifice to defraud furthered by the mailing or use of the wires.  See United States v. Dickerson, 370 F.3d 1330, 1339 (11th Cir. 2004).  Second, the Eleventh Circuit has found defendants may be required to pay restitution for loss caused by conduct that occurred outside of statute of limitations, holding:

> where a defendant is convicted of a crime of which a scheme is an element, the district court must, under 18 U.S.C. § 3663A, order the defendant to pay restitution to all victims for the losses they suffered from the defendant's conduct in the course of the scheme, even where such losses were caused by conduct outside of the statute of limitations.  The district court must find that the victims' losses resulted "directly" from the defendant's criminal conduct in the course of the scheme. The harm to the victim [must be] closely related to the scheme, rather than tangentially linked.

Id. at 1342-43.

Similarly, in Dickerson, the Eleventh Circuit noted that "courts have held that restitution may be ordered to a victim not named in the indictment, provided that the victim was directly harmed by the defendant's criminal conduct in the course of a scheme or conspiracy."  Id. at 1339 (quotation omitted) (examining cases in the United States Courts of Appeals for the Third, Fourth, and Fifth Circuits).

## C.    Application

All four Defendants were convicted of Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 371 i/c/w/ 18 U.S.C. § 1341.  Ottman, Jr., Ottman, III, and Rini were additionally convicted of various specific counts of Mail Fraud, in violation of 18 U.S.C. § 1341.  These fraud/deceit-based offenses under Title 18 of the United States Code are of the type for which

restitution is mandatory under § 3663A.  See, e.g., United States v. Yeager, 331 F.3d 1216, 1227 (11th Cir. 2003).  Therefore, Probation submitted a preliminary memoranda on March 7, 2006, asserting that it had identified 1057 victims by name and estimating the amount subject to restitution at approximately $242,249.  On May 30, 2006, Probation submitted a revised Memorandum to the Court, raising the total number of victims identified by name to 1061 and the total amount of restitution due to $250,950.98, and attaching a list of 53 victims who had returned loss declarations.

### 1.     Anthony Cantanzariti

As discussed previously in footnote 2, Cantanzariti did not file written objections to the approximately $293,000 restitution amount which was both charged in the Indictment and to which he agreed to repay in his plea agreement.  However, his counsel made an oral motion during the May 30, 2006 evidentiary hearing that his restitution amount be set at the amount of loss from victims the Government asserted it could identify.  Currently, that number stands at $250,950.98.  Again, as mentioned above, the Government did not object to such a reduction. In light of Cantanzariti's motion, the Government's lack of an objection, and the Court's finding that the Government has identified 1061 victims, Cantanzariti's mandatory restitution amount is set at $250,950.98.

### 2.     Donald J. Ottman, Jr., Donald J. Ottman, III, and Michael Rini

The Court determines Ottman, Jr., Ottman, III and Rini shall also be liable for $250,950.98 in mandatory restitution.  Although these Defendants did not plead guilty and agree

to make a specific amount of restitution in a plea bargain like Cantanzariti, a jury found all three of them guilty of Conspiracy to Commit Mail Fraud. The Court further finds the Government has met its burden of identifying 1061 victims of Defendants' scheme and proving by a preponderance of the evidence that these victims sustained $250,950.98 in losses.

Defendants raise a number of objections to their being held liable for such a large amount of restitution, and the Court will briefly address a number of them. First, Defendants object that they were minor players in the conspiracy of which they were convicted of participating in, and that their restitution amounts should be reduced commensurately. The Court acknowledges that 18 U.S.C. § 3664(h) grants, "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." However, in this case the Court chooses to apportion liability equally among the three Defendants. The evidence in this case was adequate to establish that each Defendant was intimately involved in a scheme that stole money from many hundreds of vulnerable victims. The Court believes Defendants should be held equally responsible for their criminal actions. In addition, though not an argument raised by Defendants, the Court has considered whether these three Defendants should be held liable for restitution to the individuals represented by the counts of mail fraud on which each Defendant was particularly acquitted. Because all three Defendants were found guilty of a conspiracy to commit mail fraud, and because the Court finds the Government proved its case

by a preponderance of the evidence as to all 1061 victims in question, the Court will not excuse the Defendants from liability for restitution to these victims.[4]

Second, Defendants object that they did not personally receive anywhere close to $250,950.98 in deposits into their bank accounts, and that their restitution should be reduced to reflect the degree to which they profited from their participation in this conspiracy. However, the MVRA obligates a sentencing trial court to order mandatory restitution for victims of crime for the entire amount of their loss. The MVRA is designed to compensate victims for their entire loss, not merely to reflect the amount of money defendants personally pocketed. Given the jury's determination that these Defendants were members of a conspiracy that caused approximately $250,950.98 in loss, the Court must order restitution to each victim in the full amount of each victim's losses.

Third, Defendants contend this case constitutes the type of situation contemplated by MVRA § 3663A(c)(3). According to Defendants, the victims of the conspiracy at hand are not entitled to mandatory restitution because (1) "the number of identifiable victims is so large as to make restitution impracticable," or (2) "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the

---

[4] Were the Court to subtract the amounts of restitution for the acquitted charges from Defendants' monies owed, Cantanzariti would still be responsible for a $250,950.98 loss, Ottman, Jr. would be responsible for $249,456.98, Ottman, III would be responsible for $250,452.98 and Rini would be responsible for $249,207.98. Furthermore, the restitution awards for six victims, listed in the Indictment and included in Probation's 53 names of located individuals, would be effected. However, again, the Court does not deign to adjust the restitution amounts owed by Defendants.

sentencing process." 18 U.S.C. § 3663A(c)(3).  While the Court agrees this case was somewhat complex, the victims are numerous, and the Court recognizes every victim of Defendants may not receive full recompense for Defendants' criminal scheme, the Court does not believe this case presents a circumstance where Defendants should not be obliged to make every such effort to do so.

Fourth, Defendants argue that the Government has failed to meet its necessary burden of proof to "identify" each victim of their scheme.  At most, Defendants put forth, the Government has identified 53 individuals who can receive restitution.  By Defendants' theory of restitution, the remaining 1008 individuals should not count for restitution purposes because the Government has failed to locate them.  The Court rejects this construction of the "identifiable" language in the MVRA.  Were the Court to accept Defendants' argument, it would be rewarding Defendants for their decision to prey upon a largely indigent segment of the population.  Just because the Government cannot locate these individuals' current addresses, does not mean the Government has failed to prove they exist and identify them.  The Court finds the Government has sufficiently identified 1061 victims of Defendants' fraud, and that Defendants should be held liable for the entire amount of damage they wrecked.

### 3.    Restitution Scheduling

Having considered the evidence submitted regarding Defendants' financial situations, the Court orders payment of restitution is to begin immediately.  However, the Court also finds Defendants are essentially indigent at this time and are currently unable to make more

than nominal payments.  Therefore, the Court orders each Defendant to make restitution of $10 a month.  The Court further recommends to the Bureau of Prisons that Defendants participate in the Financial Responsibility Program.  Beginning no later than sixty (60) days after Defendants' release from prison, any remaining monetary obligations shall be paid in full.  If any obligations have not been paid during that time, or if a Defendant petitions the Court that he will be unable to pay these outstanding obligations during that sixty day time period, the Court will set a payment plan based on an assessment of his ability to pay at that time.  During each Defendants' subsequent period of supervision, he and/or Probation are directed to notify the Court of any changes in his economic circumstances that may pertain to his ability to make payments on his outstanding restitution balance.  The Court may adjust the payment schedule as the interests of justice require.

Furthermore, the Court finds the 1061 victims the Government has identified by name can be divided into two groups: 53 individuals who have returned loss declarations to Probation[5] and 1008 individuals who have communicated with the Government, either because their current valid address is unknown or because they failed to respond to the Government's attempts to contact them.  Because there is no way for the Court to distinguish between the 1061 victims,[6] it orders that all restitution monies received from Defendants shall be paid to the

---

[5] The names of these 53 victims are listed in "Attachment A," which will be adjoined to the Amended Judgment in this case.

[6] The names of these 1061 victims are listed in "Attachment B," which will be adjoined to the Amended Judgment in this case.

13

victims on a pro rata basis.  See, e.g., United States v. Perry, 360 F.3d 519, 535 (6th Cir. 2004) ("The MVRA never mentions *pro rata* distribution, but §§ 3664(f)(3)(A) and (i) appear to give trial courts the right to require reimbursement in that fashion.")  In addition, given the strong likelihood that many of the 1061 victims will never be located, the Court orders that if a victim cannot be located, his pro rata share shall be distributed among the 53 victims who have submitted loss declarations to Probation.  Once these 53 victims have been repaid in full, any additional money recovered from Defendants shall be paid into a deposit fund administered by the Clerk's Office for potential future claims by victims identified at a later date.

## IV.    CONCLUSION

**SO ORDERED**, this the 13th day of June, 2006.


**s/   Hugh Lawson**

**HUGH LAWSON, JUDGE**

pdl